# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| INDIA ENGLE, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   No. 09-2459-CM-GLR |
| TREGO COUNTY JUVENILE CENTER, | ) |
| et al., | ) |
| | ) |
|       Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff India Engle brings this action under 42 U.S.C. § 1983 and the Kansas Tort Claims Act ("KTCA"), Kan. Stat. Ann. § 75-6101 *et seq.*, against Don Jordan, Secretary of Kansas Department of Social and Rehabilitation Services ("SRS"), and the following defendants: Trego County Juvenile Center ("Trego"); KVC Behavioral Healthcare, Inc. ("KVC"); Barry Mayfield, an employee of Trego; and Jane and/or John Doe(s), including an unidentified social worker and her supervisor, employed by KVC and/or SRS. Plaintiff claims that defendants were negligent and that defendants violated her constitutional rights while she was in state custody. With respect to plaintiff's federal civil rights claim, the individual defendants are sued in their individual capacities acting under color of state law. The case is before the court on defendant Don Jordan's Motion to Dismiss (Doc. 11). For the reasons that follow, the court grants defendant's motion.

**I.**     **Factual and Procedural Background**

According to plaintiff's complaint, plaintiff arrived at Trego County Juvenile Center on May 16, 2007, and was under the supervision of defendant Mayfield. She was a minor at the time, and

was pregnant. She was informed that she would be released to live with her brother or aunt on September 17, 2007.

While in custody at Trego, defendant Mayfield singled plaintiff out, talking to her in private. In August 2007, Mayfield told plaintiff he loved her and wanted to run away with her.

Plaintiff became scared of Mayfield but was punished under his authority when she attempted to avoid him. Mayfield became threatening toward her if she did not focus attention on him. He threatened that he could keep plaintiff at Trego if she did not comply with his sexual advances and wishes.

On September 1, 2007, Mayfield took plaintiff to sweep a bathroom where he cornered her, touched her, and kissed her, until he was interrupted by staff paging him to another location. Mayfield made repeated but unsuccessful attempts to speak to plaintiff alone. Later on that same day, Mayfield sent the other girls in plaintiff's unit outside to mow, and put plaintiff in a holding cell. Soon after, he took her from the holding cell outside the facility through a door that locked behind her. He walked plaintiff to his car, ordered her to get in, and told her that if she did not, he would "get to her later." Plaintiff did not want to get into the car, but believed screaming for help would be useless.

Upon leaving Trego with plaintiff, Mayfield drove to his home, assaulted his wife, ran back to the car with his wife's purse, and informed plaintiff he was taking her to Las Vegas. Mayfield then drove off with plaintiff toward the Colorado border. During any rest stops along the way, defendant stood outside the bathroom door guarding against any attempts plaintiff might make to get away.

Once in Colorado, Mayfield kept plaintiff in motel rooms over a series of a few days and

nights. During this time, Mayfield raped plaintiff multiple times.

Mayfield eventually drove plaintiff to Las Vegas. Because photo identification was required to obtain a motel room, and Mayfield assumed he was being pursued by authorities, they spent the night in the car on a dirt road. Plaintiff was terrified and felt she was in danger. Due to the stress and sexual assaults, plaintiff was experiencing severe stomach cramps, which was especially frightening in light of her pregnancy.

On the morning of September 7, 2007, Mayfield was pulled over by police, and was subsequently arrested for the APB warning issued regarding his departure with plaintiff.

Plaintiff disclosed in detail the circumstances surrounding her abduction to police, believing that if she did so, she would be returned to her aunt or brother. However, upon plaintiff's return to Kansas, she met with her social worker and her guardian ad litem. She was told that, because of her history of running, no one would believe her if she told the court that she had been abducted. She was advised that her situation would be worse if she insisted on this "story."

At her court hearing, plaintiff asked her guardian ad litem if she could speak to the judge, but was told no, and that speaking to the judge would only make things worse.

Plaintiff was not released to her aunt or brother in September 2007. She remained in the State's custody because she was determined to have voluntarily run away from Trego. During required counseling sessions, plaintiff was repeatedly told that all of the events involving Mayfield were her fault. She was repeatedly told that she had chosen to run away with Mayfield.

Plaintiff remained in custody until March 21, 2008. In April, 2008, plaintiff turned eighteen. She filed this action on August 31, 2009. Defendant asks this court to dismiss the claims against him based on qualified immunity and the statute of limitations.

**II.     Judgment Standards**

To survive a motion to dismiss, a complaint must present factual allegations that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555, 570 (2007); Fed. R. Civ. P. 12(b)(6). The allegations must be enough that, if assumed to be true, the plaintiff plausibly, not merely speculatively, has a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008). "'Plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the [plaintiff 'has] not nudged [its] claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on a motion to dismiss for failure to state a claim, the court assumes as true all well-pleaded facts, as distinguished from conclusory allegations, and views those facts in the light most favorable to plaintiff. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007); *Moss v Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

### III. Discussion

#### A. The Claims

Plaintiff appears to assert three claims that include defendant Jordan: (1) "defendants" are liable under 42 U.S.C. § 1983 either by their deliberate indifference to dangers of which they knew or should have known with respect to plaintiff's placement, or their failure to supervise and monitor plaintiff's placement. Specifically, plaintiff alleges that "defendants," acting under color of law,

-4-

caused harm to plaintiff by (a) not allowing her to talk to the judge; (b) encouraging and facilitating counseling sessions to convince plaintiff that the events described above were her fault and/or that she was to blame for what had happened to her; and by (c) failing to provide plaintiff proper mental health services. Plaintiff also claims that (2) "defendants'" failure to intervene or take reasonable actions to protect plaintiff from defendant Mayfield, and (3) "defendants'" conduct following the abduction was objectively unreasonable, plainly incompetent and/or knowingly illegal, and/or negligent in violation of plaintiff's rights guaranteed in the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution, and is compensible under 42 U.S.C. § 1983 and the KTCA. Two other claims are directed specifically at the Jane and John Doe defendants and defendant Mayfield.

### B. The Parties' Positions

Jordan moves this court to dismiss plaintiff's claims against him for failure to state a claim, or because he is entitled to qualified immunity. He also asserts that any claims based on allegations occurring before August 31, 2007, are barred by the 2-year statute of limitations applicable to § 1983 claims. By way of response, plaintiff agrees that liability cannot arise out of any conduct occurring prior to August 31, 2007. Nevertheless, plaintiff asserts that she alleges no cause of action arising from conduct predating August 31, 2007. The court agrees that the statute of limitations does not appear to bar the claims asserted here.

In her response, plaintiff also "recognizes that her [c]omplaint could be read as lacking some amount of factual detail regarding [d]efendant Jordan's personal involvement." (Doc. 18, at 4.) She maintains that the complaint was filed on a good faith belief that the actions of SRS and its policies violated plaintiff's constitutional rights, and that defendant Jordan can be held liable, as agency head, for such violations. She suggests, however, that limited discovery is required to determine the relationship between SRS and KVC, what policies guided which employees, and what notice

-5-

defendant had. She argues that dismissal at this point would be premature. Plaintiff asserts that, while her complaint is "barebones," it is sufficient to put defendant Jordan on notice of the claims against him and the general basis for those claims. (Doc. 18, at 4.)

**C.     Analysis**

As a threshold inquiry to qualified immunity, the court first "'must determine whether plaintiff's allegations, even if accepted as true, state a claim for violation of any rights secured under the United States Constitution.'" Kaul v. Stephan, 83 F.3d 1208 (10th Cir. 1996) (quoting *Abeyta v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996)). If plaintiff's claims are not actionable, the court does not reach the issue of qualified immunity. *Id*.

The court finds that the insufficiency of the complaint renders this court unable to undertake a meaningful analysis of defendant Jordan's qualified immunity claim. Plaintiff's complaint fails to isolate defendant Jordan's allegedly unconstitutional act or acts. Indeed, Jordan is not mentioned by name anywhere in the complaint except where he is named as a party. The complaint makes no mention of Jordan having any direct contact with or knowledge about plaintiff's situation, and fails to set out how Jordan might be individually liable for deprivations of plaintiff's constitutional rights. Additionally, given the complaint's use of the collective term "defendants" with no distinction as to what acts or constitutional violations are attributable to whom, there is no reasonable way for defendant Jordan to ascertain what particular unconstitutional acts he is alleged to have committed. *Robbins*, 519 F.3d at 1250 (citing *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. May 31, 2001)).

And although plaintiff asserts in response to the motion that her claims against defendant Jordan could be based on supervisory liability arising from SRS employees' implementation of SRS policies, this allegation does not appear in the complaint, nor does the complaint indicate what

-6-

particular actions are alleged as grounds for defendant Jordan's liability as a supervisor who approved, authorized, or ratified unconstitutional action by his inferiors. *Robbins*, 519 F.3d at 1252–53. For instance, plaintiff states that she "was repeatedly told that all of the events . . . were her fault" and "was repeatedly told that she chose to run away with [Mayfield,]" but fails to state "by whom" these acts were perpetrated or how they are attributable to defendant Jordan. Specifically, the facts do not allege how defendant Jordan, or the agency, was involved in (a) preventing plaintiff from talking to the judge; (b) facilitating objectionable counseling sessions; or (c) failing to provide proper mental health services, or what acts or omissions violated the Fourth, Fifth, Eighth, and/or Fourteenth Amendments.

A complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And under the "plausibility" standard that now guides the court, a complaint must contain sufficient factual allegations to give fair notice to defendants of the grounds of the claim against them. *Robbins*, 519 F.3d at 1248. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing *Twombly*, 550 U.S. at 556 n.3.)

Plaintiff's conclusory allegations do not contain the facts necessary to determine what civil rights, if any, were violated or whether the claims are based on violations of clearly established law. The complaint does not contain facts sufficient to state a claim of liability, supervisory or otherwise, under 42 U.S.C. § 1983 as to defendant Jordan, and fails to provide notice of the claim to which Jordan is entitled. Because the court grants the motion on this ground, it declines to consider the other grounds for dismissal set forth in defendant's motion.

Because the court does not believe amendment would be futile, and because generally, courts

prefer to evaluate claims on their merits, the court dismisses the claims against defendant Jordan without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (suggesting that a Rule 12(b)(6) dismissal should be without prejudice if leave to amend would not be futile); *see, e.g., Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1273 (10th Cir. 2001) (noting court's preference for resolving claims on the merits). Should plaintiff reassert § 1983 claims against defendant Jordan in an amended complaint, defendant will be permitted to raise the defense of qualified immunity, which the court is unable to resolve on the pleadings here.

Finally, the court notes that defendant Jordan's motion does not address plaintiff's claims under the KTCA, despite the fact that the complaint does appear to include defendant Jordan in its negligence allegations. By way of reply, defendant Jordan extends his arguments of insufficiency to the KTCA claims, and asserts the discretionary function exception as a defense to those claims. *See* Kan. Stat. Ann. § 75-6104(e); *Barrett ex rel. Barrett v. Unified Sch. Dist. No. 259*, 32 P.3d 1156, 1166–67 (Kan. 2001). New arguments raised by way of reply briefing deny the opposing party an opportunity to respond, and deprive the court of adequate briefing. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000). Because the court dismisses the § 1983 claims without prejudice, the court declines to address the sufficiency of the KTCA claims, or related jurisdictional issues which were not at issue in defendant's motion.

**IT IS THEREFORE ORDERED** that defendant Don Jordan's Motion to Dismiss (Doc. 11) is granted.

**IT IS FURTHER ORDERED** that plaintiff's § 1983 claims against defendant Jordan are dismissed without prejudice.

Dated this 25th day of March 2010, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**