# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| INDIA ENGLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 09-2459-CM-GLR |
| ) | |
| KELLEY DETENTION SERVICES, INC. ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff India Engle brings this action under 42 U.S.C. § 1983 and the Kansas Tort Claims Act ("KTCA"), Kan. Stat. Ann. § 75-6101 *et seq.*, against KVC Behavioral Healthcare, Inc. ("KVC"); Kelley Detention Services, Inc., d/b/a/ Trego County Juvenile Center ("Kelley" or "the Center"); Barry Mayfield; and Cynthia Smith. Plaintiff claims that defendants were negligent and/or that defendants violated her constitutional rights while she was in state custody. The court recently granted plaintiff leave to amend her complaint, and the case is now before the court on Separate Defendant KVC Behavioral Healthcare, Inc.'s Motion to Dismiss (Doc. 81) and Defendant Kelley Detention Services, Inc.'s Motion to Dismiss (Doc. 86). For the reasons that follow, the court denies defendants' motions.

**I.  Factual and Procedural Background**

This case arises from plaintiff's alleged abduction while she was a juvenile in state custody. According to plaintiff's amended complaint, plaintiff arrived at Kelley's Trego County Juvenile Center on May 16, 2007, and was under the supervision of defendant Mayfield. She was a minor at

the time, and was pregnant. She was informed that she would be released on September 17, 2007 to live with her brother or aunt.

While plaintiff was in custody at the Center, defendant Mayfield singled plaintiff out, talking to her in private. In August 2007, Mayfield told plaintiff he loved her and wanted to run away with her.

Plaintiff became scared of Mayfield but was punished under his authority when she attempted to avoid him. Mayfield became threatening toward her if she did not focus attention on him. He threatened that he could keep plaintiff at the Center if she did not comply with his sexual advances and wishes.

On September 1, 2007, Mayfield took plaintiff to sweep a bathroom where he cornered her, touched her, and kissed her, until he was interrupted by staff paging him to another location. Mayfield made repeated but unsuccessful attempts to speak to plaintiff alone. Later on that same day, Mayfield sent the other girls in plaintiff's unit outside to mow, and put plaintiff in a holding cell. Soon after, he took her from the holding cell outside the facility through a door that locked behind her. He walked plaintiff to his car, ordered her to get in, and told her that if she did not, he would "get to her later." Plaintiff did not want to get into the car, but believed screaming for help would be useless.

Upon leaving the Center with plaintiff, Mayfield drove to his home, assaulted his wife, ran back to the car with his wife's purse, and informed plaintiff he was taking her to Las Vegas. Mayfield then drove off with plaintiff toward the Colorado border. During any rest stops along the way, defendant stood outside the bathroom door guarding against any attempts plaintiff might make to get away.

Once in Colorado, Mayfield kept plaintiff in motel rooms over a series of a few days and nights. During this time, Mayfield raped plaintiff multiple times.

Mayfield eventually drove plaintiff to Las Vegas. Because photo identification was required to obtain a motel room, and Mayfield assumed he was being pursued by authorities, they spent the night in the car on a dirt road. Plaintiff was terrified and felt she was in danger. Due to the stress and sexual assaults, plaintiff was experiencing severe stomach cramps, which was especially frightening in light of her pregnancy.

On the morning of September 7, 2007, Mayfield was pulled over by police, and was subsequently arrested for the APB warning issued regarding his departure with plaintiff.

Plaintiff disclosed in detail the circumstances surrounding her abduction to police, believing that if she did so, she would be returned to her aunt or brother. However, upon plaintiff's return to Kansas, she met with her case worker and her guardian ad litem. She was told that, because of her history of running, no one would believe her if she told the court that she had been abducted. She was advised that her situation would be worse if she insisted on this "story."

At her court hearing, plaintiff asked her case worker, defendant Cynthia Smith, if she could speak to the judge, but was told no, and that speaking to the judge would only make things worse.

Plaintiff was not released to her aunt or brother in September 2007. She remained in custody because she was determined to have voluntarily run away from the Center. During required counseling sessions, plaintiff was repeatedly told that all of the events involving Mayfield were her fault. She was repeatedly told that she had chosen to run away with Mayfield.

Plaintiff remained in custody until March 21, 2008. In April, 2008, plaintiff turned eighteen. She filed this action on August 31, 2009. The original complaint contained 42 U.S.C. § 1983 claims against KVC and Kelley, but those claims were eliminated in plaintiff's amended complaint. (Docs.

68, 70.)

The amended complaint specifically alleges that defendants Kelley and KVC were at all relevant times acting on behalf of the State of Kansas Department of Social and Rehabilitative Services ("SRS"). Plaintiff's amended complaint sets out essentially four claims against defendant Kelley, all of which arise under the KTCA. These include negligently hiring, training, and supervising defendant Mayfield; negligent failure to establish or maintain access or security controls to prevent abduction; negligent failure to establish or maintain "movement protocols" to prevent abduction; negligent failure to establish or maintain "child grooming policies" to prevent inappropriate befriending; and negligent failure to intervene or protect. (Doc. 70, at 10.)

The amended complaint asserts that KVC was negligent under the KTCA and/or common law for failing to investigate the circumstances of plaintiff's "escape" before making misrepresentations to third parties, including the district court judge. Plaintiff asserts that this failure resulted in her spending an additional 186 days in custody.

Finally, in addition to KTCA and/or common law claims, plaintiff asserts 42 U.S.C. § 1983 claims against defendant Smith in her individual capacity. She asserts only § 1983 claims against defendant Mayfield, alleging violations of her rights under the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments.

Now, both KVC and Kelley seek dismissal of the case against them on the basis that there is no federal cause of action against them.

## II.  Legal Standards and Discussion

It is undisputed that, with the dismissal of the § 1983 claims against them, only state law claims remain against defendants KVC and Kelley. It is also undisputed that there is not complete diversity among the parties, and this court's subject matter jurisdiction with respect to the claims

against the two entities arises exclusively through the exercise of pendent or supplemental jurisdiction. 28 U.S.C. § 1367. Under that statute, this court may only decline to exercise supplemental jurisdiction over a claim if:

> (1) the claim raises a novel or complex issue of State law;
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
> (3) the district court has dismissed all claims over which it has original jurisdiction; or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id*.

If at least one of these criteria are met, the court has discretion as to whether to exercise jurisdiction over the claim or claims. In doing so, the court considers "the nature and extent of pretrial proceedings, judicial economy, convenience, and [whether] fairness would be served by retaining jurisdiction." *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995) (quoting *Thatcher Enter. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990)).

Defendants argue that criteria (1), (2), and/or (3) exist here, and the court should decline to exercise supplemental jurisdiction.[1] Plaintiff argues that none of the criteria are met, and that the state-law claims against defendants are properly before the court.

### A.   Novel Issue of State Law?

Defendants suggest that this court should decline to exercise supplemental jurisdiction over the state-law claims because the KCTA claim raises an "open"[2] or "uncertain"[3] question of law. Specifically, for plaintiff to succeed in this action, this court would have to determine, among other

---

[1] Although defendants filed separate motions which present slightly different arguments, the court addresses their arguments collectively.

[2] (Doc. 82, at 7.)

[3] (Doc. 87, at 4.)

things, that KVC and Kelley were "employees" of the State of Kansas as that term is defined in the KTCA. *See* Kan. Stat. Ann. § 75-6102(d). In support, defendants point to an opinion issued by Judge Lungstrum of this district, in which he observed that "Kansas appellate courts have not offered any helpful test or analysis to determine whether a party is an employee or an independent contractor under [Kan. Stat. Ann. § 75-6102(d)]." *P.S. ex rel. Nelson v. The Farm, Inc.*, 658 F. Supp. 2d 1281, 1296 (D. Kan. 2009). But, as plaintiffs point out, this fact did not stop Judge Lungstrum from proceeding with a well-reasoned analysis of the legal question presented in that case, which involved whether a not-for-profit corporation that contracted with SRS to provide foster care and reintegration services to children in SRS custody could claim immunity under the KCTA as an "employee" of SRS.

While there may not be a "helpful" test specifically to determine employee versus independent contractor status, there is ample guidance for evaluating whether a party meets the statutory definition, which include general tests, relevant factors, and other standards. *See id*. at 1296–98 (citing, *inter alia*, *Mitzner ex rel. Bishop v. State*, 891 P.2d 435 (Kan. 1995), *Falls v. Scott*, 815 P.2d 1104, 1112 (Kan. 1991); *Brillhart v. Scheier*, 758 P.2d 219, 223 (Kan. 1988); *Bonewell v. City of Derby*, 693 P.2d 1179 (Kan. 1985); Restatement (Second) of Agency § 220(2)). This court believes there is a difference between an "open" or "uncertain" question and one that is "novel."[4] The question presented here by these state-law claims does not appear, at this stage, to be the type of novel or complex question that would seriously implicate principles of comity. *See Bauchman for Bauchman v. West High School et al.*, 132 F.3d 542, 549 (10th Cir. 1997). The court believes that, should the case go forward, the court will be able to make the necessary determinations under the

---

[4] In its reply brief, defendant KVC suggests that this is a "novel" question because "none of the opinions referenced [in plaintiff's response] address whether the named defendant [*i.e.*, KVC,] [is] a statutory employee." (Doc. 98, at 3.)

terms of the statute as guided by the ample caselaw on the subject.

**B.      State Claims Substantially Predominate?**

Defendant Kelley argues that the state issues, particularly the KTCA issues, substantially predominate the proof, issues, and comprehensiveness of the remedy sought in this case against Kelley. On this basis, and relying on the case of *United Mine Workers v. Gibbs*, Kelley asks this court, in its discretion, to decline supplemental jurisdiction. *See* 383 U.S. 715, 725–27 (1966). As the court notes in the next section, *Gibbs*' applicability to this case is questionable.

Although here federal claims remain against only two defendants while state claims remain against three of the four defendants, the court cannot say that the state law claims predominate. Regardless, the factors this court considers in determining whether to dismiss the claims against the moving defendants weigh against dismissal. *See Anglemyer*, 58 F.3d at 541. The court and the parties have expended significant effort regarding this case already; although trial is not scheduled until September, the pretrial conference and the close of discovery are scheduled to occur in less than two weeks. The court does not believe that trying these different claims together in one action will confuse a jury. On the contrary, the interests of justice and judicial economy would be served by retaining a single forum to litigate all matters arising from this "common nucleus of operative fact." Indeed, it would be a waste of judicial resources to force the state claims to be tried separately in state court. In its discretion, the court believes fairness would be served by retaining jurisdiction over the state-law claims against Kelley and KVC. *See id*.

**C.      Are All Claims Dismissed?**

Although the federal claims against KVC and Kelley are dismissed, there are still § 1983 claims pending against defendants Mayfield and Smith based on the same case or controversy and arising out of the same operative facts. Nevertheless, defendants seem to suggest that, because all

federal claims against them are dismissed, 28 U.S.C. § 1367(c)(3) is satisfied.

In *Aldinger v. Howard*, 427 U.S. 1 (1976) and again more specifically in *Finley v. United States*, 490 U.S. 545 (1989), the United States Supreme Court rejected the so-called doctrine of "pendent party jurisdiction." Pendant party jurisdiction describes a situation, such as the one here, where state and federal claims are pending against one or more parties, but there is or are an additional party or parties against whom only the state claims, but not federal claims, run. In *Finley*, the court ruled that a federal court could not assert pendent jurisdiction over parties as to which no independent basis for federal jurisdiction existed. Furthermore, *Aldinger* specified that the *Gibbs* rational is not transferrable to the context of pendent-party jurisdiction.

*Finley* and its predecessors were specifically overruled by statute when 28 U.S.C. § 1367 was amended in 1990. *See Baker v. Bd. of Regents of Sate of Kan.*, 991 F.2d 628, 634 (10th Cir. 1993). The last sentence of subdivision (a) of § 1367 now provides that supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties. Because federal claims still exist in this action, the court is not permitted to decline jurisdiction on the basis set out in § 1367(c)(3). *See*, *e.g.*, *Faragalla v. Douglas County School Dist. RE* , Slip Op. Nos. 09-1393, 10-1433, 2011 WL 94540, at *17 (10th Cir. Jan. 12, 2011).

Despite the language of the statute, defendants point to caselaw in which the Tenth Circuit Court of Appeals reversed the district court for exercising jurisdiction over state law claims based solely on supplemental jurisdiction. (Doc. 82, at 3–5, citing *Brooks v. Gaenzle, et al.*, 614 F.3d 1213, 1230 (10th Cir. 2010); *Bauchman*, 132 F.3d at 549; *Ball v. Renner*, 54 F.3d 664 (10th Cir. 1995).) However, as plaintiffs point out, all of the cases cited by defendants involve situations where all federal claims had been dismissed against all parties and § 1367(c)(3) was satisfied. Under the circumstances of this case, § 1367(c)(3) does not provide a basis for the court to decline

the exercise of jurisdiction.

Finding that the exercise of supplemental jurisdiction over plaintiff's state-law claims against defendants Kelley and KVC is appropriate, the court denies the motions.

**IT IS THEREFORE ORDERED** that Separate Defendant KVC Behavioral Healthcare, Inc.'s Motion to Dismiss (Doc. 81) and Defendant Kelley Detention Services, Inc.'s Motion to Dismiss (Doc. 86) are denied.

Dated this 15th day of February 2011, at Kansas City, Kansas.

><u>**s/ Carlos Murguia**</u>
>**CARLOS MURGUIA**
>**United States District Judge**